Allen, J.
This was an action of ejectment, in which the defendant relied upon an adverse possession in himself and those under whom he claimed, to defeat the plaintiff’s recovery. A bill of exceptions was filed, setting out evidence on both sides. It does not appear that all the evidence is so set forth; but it must be intended to have set forth, if not all, at least so much of the evidence as served to show the mate *309 riality of the instructions which each party asked for: And the instructions themselves must be construed with reference to the facts, which the evidence set forth, proved or tended to prove. The court gave the instruction asked for by the plaintiff; and gave the first instruction asked for by the defendant, with a qualification; and refused to give the second- instruction asked for by the defendant: And the bill of exceptions brings up for review the correctness of these decisions.
The questions, though presented under different aspects, at last resolve themselves into one.
John McClure, the fee simple owner of a lot in the-city of Wheeling, permitted his brother Andrew to enter upon, improve and enjoy the property, and take the rents, under an alleged verbal gift of the property to his brother for his life or the lives of himself and wife; and Andrew, as it was contended, claimed to own an estate for life derived from such verbal gift; which claim was known to John McClure during the whole time that his brother held the possession.
On these facts the question arises, Whether an open, exclusive, notorious and uninterrupted possession for more than twenty years before the institution of this suit, taken and held as aforesaid and under such a claim, was such an adverse possession as would bar the plaintiff’s action of ejectment.?
As a general rule, possession, to give title, must be adversary. And where the defendant has entered under the plaintiff, and acknowledged his title as that under which he holds, he cannot controvert it. Thus the lessee is not permitted to dispute the title of the landlord. Having entered under and holding in subserviency to it, it is that which maintains and justifies his possession, and he impeaches his own title by assailing it. Where it is sought to make out a title by adverse possession, the possession as a general rule *310 should be adverse in its inception. Where the original possession was taken in subordination to the title of another, it has been decided that the tenant could not, own change the character of his possession.
It has however been held, that a person who has taken possession by agreement, may. under certain circumstances, disavow the title under which he had entered; and that an open and explicit disclaimer of a holding under such title, accompanied with the -assertion of an adverse title in himself, and notice to the party under whom he entered, will make his possession adverse to the rightful owner. The privity existing between them is said to be dissolved by such a proceeding; that his possession becomes tortious, and in effect equivalent to an ouster of the rightful owner; and the statute begins to run from the time of such wrongful act, as in any other case of a tortious ouster. An adverse possession depends upon the intention with which the possession was taken or held. Whenever the act itself imports that there is a superior title in another by whose permission, and in subordination to whose still continuing and subsisting title, the entry is made, such entry cannot be adverse to the owner of the legal title; and such possession so commencing cannot be converted into an adverse possession, but by a disclaimer, the assertion of an adverse title and notice. “It would,” says Judge Marshall in Kirk v. Smith, 9 Wheat. R. 241, “ shock the sense of right, which must be felt equally by legislators, and by judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title.”
In conformity with these principles, it is held that the possession of the purchaser from the plaintiff without deed, is friendly to the plaintiff, and stops the running of the statute. Gay v. Moffitt, 2 Bibb. R. 506. In Williams v. Snidow, 4 Leigh 14, the same doctrine *311 was laid down and acted on, although the vendee had been put in possession, had paid the purchase money and used and occupied the property for his own exclusive benefit. But the contract was executory, no conveyance had been executed, the contract recognized the legal title as outstanding, and the entiy was in subordination thereto.
It is supposed that a different rule in regard to adverse possession, has been established in sundry cases decided in the Supreme court of the United States, begining with the case of Blight's lessee v. Rochester, 7 Wheat. R. 535; followed by The Society for the propagation of the Gospel v. Clarke, 4 Peters’ R. 480; Bradstreet v. Huntington, 5 Peters’ R. 402; Willison v. Watkins, 3 Peters’ R. 43; Boone v. Chiles, 10 Peters’ R. 177; Zeller’s lessee v. Eckert, 4 How. S. C. R. 289. These cases contain dicta of the judges, which, considered apart from the cases in which they were uttered, would seem to imply that the possession without a conveyance is to be treated as adverse to that of the vendor.
If such be the rule of that court, it is a sufficient answer to say that the case of Williams v. Snidow, ubi supra, establishes the law to be otherwise in Virginia, and conforms with the doctrines of the English cases. But the cases themselves, when examined, show that in almost every instance the person in possession claimed the absolute estate. The case of Blight’s lessee v. Rochester, 7 Wheat. R. 535, is the leading case; and the remarks of Chief Justice Marshall have in almost totidem verbis been reaffirmed in all the subsequent cases. There the plaintiffs were the heirs of John Dunlop, a citizen of the United States. John was the brother of James Dunlop an alien, who came to the country after the treaty of peace, but before the treaty of 1794. After the death of James Dunlop,, one Hun *312 ter, professing to have purchased a piece of the land of James had died seized, from his brother John, and conveyed the land to the defendant, who entered and held possession.
The title of James Dunlop, not being in existence at the date of the treaty of peace was not protected by the treaty of 1794, and James being an alien when he died, nothing descended to his brother John; and the effort on the part of the heirs of John Dunlop, was to recover the land, not because they had title, for no such title descended to their ancestor, but because, as Hunter had professed to have purchased from John Dunlop, and to have conveyed the title so alleged to have been purchased, to the defendant, that this was a recognition of the title in John Dunlop, and the purchaser from Hunter was estopped from denying their title. From this statement it will be perceived that the defendant, who purchased from Hunter, though he supposed Hunter was selling and conveying the Dun-lop title, entered as owner of the absolute estate. Notwithstanding he purchased and received a conveyance of a derivative title, he entered and held for himself as owner of the fee. So far from his act importing a superior outstanding title in Dunlop, in subordination to which he held, he claimed by virtue of his deed, the title against Hunter his immediate vendor, and those from whom Hunter professed to have purchased. Where the vendor has actually conveyed, his title is extinguished, and he can no longer sue; and though in fact Hunter may not have purchased from John Dun-lop, yet he professed to convey that title to the defendant, who entered as vendee of the absolute estate, and not in subordination to a title which he supposed to be extinguished by his own deed. The defendant holding in his own right by a deed which purported to pass the legal title, there was nothing in the relation of the *313 parties which estopped him from showing the plaintiffs had no title whatever: And this was the amount of the decision in that case.
Willison v. Watkyns, 3 Peters’ R. 43, was the ordinary case of a tenant disavowing the title of his landlord, and holding over. The case has no hearing on this question. In The Society for the propagation of the Gospel v. Clarke, 4 Peters’ R. 480, it appeared that the state, under the idea that the title of the society for the propagation of the Q-ospel was divested by the revolution, granted the land to the town of Paulet, which leased to Clarke. The court held that the town claimed as grantees of the state; that their title, though derivative from and consistent with the plaintiff’s title, was a present claim in fee in exclusion of the plaintiffs, and their* possession was adverse. This therefore was the ordinary case of a vendee to whom a deed has been made. He claims through, but recognizes no subsisting title in the vendor. So in the case of Bradstreet v. Huntington, 5 Peters’ R. 402, the tenant in possession claimed under an absolute conveyance in fee from one tenant in common. The court held that one who enters under a deed purporting to convey to him an estate in fee, claiming to be sole, and exclusive, and absolute owner in fee thereof for forty years, may be regarded as holding adverse to all the world. In this the same principle is affirmed as in the other cases; the entering and holding was not ■in subordination to a subsisting admitted title in another. The case of Boone v. Chiles, 10 Peters’ R. 177, was a complicated controversy in equity, involving questions of trust and fraud. Zeller's lessee v. Eckert, 4 How. S. C. R. 289, was the case of a holding over after the determination of a particular estate; and it was decided that as the right of entry accrued on the determination of the particular estate, such holding over, if accompanied with a disclaimer of the *314 title, might, under the circumstances, be sufficient to raise an adverse possession. These cases as decided, do not conflict with the principles recognized in Williams v. Snidow. They establish the rule as the law of that tribunal, that a person having the complete legal title and possession, or entering under a deed purporting to convey the legal title, and holding the exclusive possession, is considered as holding adversely to all the world, including those from whom his title and possession are derived. The entry or the holding in such case imports no recognition of a subsisting title in another ; by whose permission, and in subordination to whose subsisting and continuing title, the party entered or holds.
An attention to this principle reconciles most of the authorities, and the generality of expression indulged in by some of the judges in regard to vendor and vendee, must be construed with reference to the cases before the court. It is said for instance that the possession of the vendee is adverse to the title of the vendor. In the case itself the vendee claimed to be invested with that title, and therefore denied all title in the vendor. His title being as he supposed complete, his possession under it was adverse to the vendor, as it was to the rest of the world. But in the case of a vendee who enters under an executory contract which leaves the legal title where it was, and contemplates a future conveyance, the vendee necessarily enters in subordination to it, holds under, and relies upon it, to protect his possession in the mean time. How such a possession could be treated as adverse to the owner of the legal title, I cannot comprehend. In all these cases of vendee who has no deed, of lessee, mortgagor, cestui que trust, &c. where one is in under the owner of the legal title, a privity exists which precludes the idea of a hostile, tortious, wrongful possession, which could silently ripen into a title by adverse *315 possession under the statute of limitations. The law under certain circumstances, such as long possession and exclusive enjoyment, acquiescence, abandonment, &c. raises a presumption of a deed, a release, &c. but does not erect a legal title upon the foundation of an adverse possession. On the contrary, it resorts to a presumption from his holding under the title, not that his possession was adverse to such title, which would be against the fact, but that he has been clothed with it. Otherwise, there would never have been a necessity for this doctrine of presuming a deed. The courts do not as a general rule, presume a deed short of the period necessary to bar a right of entry in cases of adverse possession. If such possession as has been adverted to could be treated as adverse, it would have been sufficient without a resort to presumptions. It seems to me that the court in Sumner v. Stevens, 6 Metc. R. 337, did not give sufficient weight to the distinction which I have supposed to exist, unless indeed there is something peculiar in the local law of Massachusetts, which does not appear in the report of the case.
The possession of a grantee under a defective conveyance, but which the parties by mistake, believe to be good, may not be a possession taken and held in subordination to the title of the legal owner. Eo such title is recognized in the act of taking possession; the quo animo with which he enters and holds is the same as if the conveyance clothed him with the complete title; and therefore such possession so taken and held may be adverse to the legal owner.
But the proposition, if good law, is no authority for the decision to which it was supposed to be analogous. The case was that of an entry by a son under a parol gift of the father, and the sole and exclusive possession by the son thereafter: Such possession was held to be adverse. Eo title to lands can be acquired in Virginia by a parol gift. A title can only pass or be acquired *316 by a grant, or deed, or devise, or descent, or by an adverse holding. He who enters under a parol gift, enters with the knowledge that such gift vests no title reai estate in him. When he enters therefore by permission of the owner, claiming to hold any estate by virtue of the gift, as such parol gift cannot operate to divest the title of the legal owner, the very fact of such permissive entry under such a claim is in its nature a recognition of the, continued existence of such subsisting title in the legal owner; and the claim to hold any estate by gift from the legal owner, is a claim to hold in subordination to his legal title. The legal title must be somewhere; his entry and claim disavows such title in himself, and asserts it to be in another by whose permission he has entered, and in virtue of whose alleged gift he claims to hold. When he sets up such entry and the possession so held as adverse to the legal owner, he repudiates his own title ^and possession. When it is shown that the possession commenced under such verbal gift, and the estate for life is claimed in virtue of it, the party so entering and holding thereby admits that the gift is executory and inchoate, and so continues until a conveyance is made. Such a gift implies an intention on the part of the owner to convey. The entry and claim to hold for life, and the exclusive occupation and enjoyment, are all consistent with the original design of the parties, and do not tend to prove a disavowal of the legal owner’s title, accompanied with the assertion of an adverse title in himself. On the contrary, every such act under the claim to own an estate for life in virtue of the alleged gift, is to be referred to the original recognition of the title of the legal owner when possession was delivered. To hold that such permissive occupation, use and exclusive enjoyment under parol gifts can amount to an adverse possession, would lead to serious consequences in Virginia. It is a common *317 practice for the father to place his son in possession of the portion he destines for him, and to permit him to hold possession and take the profits to his exclusive use; but for prudential reasons he retains the legal title. It is called a gift, and both parties understand that at some future day it will be consummated by a conveyance or a devise. But it has never been supposed that these acts divest the owner of his legal title, or prevent him from re-entering and resuming possession. According to the pretensions of the appellant, a possession so taken and held, with a claim to own an estate in fee, would be adverse, and could be set up as a bar to a recovery by the legal owner. I think the law is otherwise, and that the court below did not err against the appellant in any of the decisions complained of. I am therefore for affirming the judgment.
Daniel and Samuels, Js. concurred in the opinion of Allen, J.
Moncure and Lee, Js. dissented.
Judgment affirmed.